2026 IL App (1st) 241578-U

SECOND DIVISION
June 30, 2026

No. 1-24-1578

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

|  |  |  |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|  | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
|  | ) |  |
| v. | ) | 12 CR 14828 |
|  | ) |  |
| TERRANCE DENHAM, | ) | Honorable |
|  | ) | Laura Ayala-Gonzalez, |
| Petitioner-Appellant. | ) | Judge Presiding |
|  | ) |  |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Petitioner cannot overcome presumption that postconviction counsel provided reasonable assistance.

¶ 2     Terrance Denham appeals the dismissal of his postconviction petition at the second stage. He claims his postconviction counsel provided unreasonable assistance for failing to adequately craft a proportionate-penalties challenge to his 60-year prison sentence. We disagree and affirm.

¶ 3     The history of Denham's trial and sentencing is laid out in our opinion affirming both on direct appeal. *People v. Denham*, 2019 IL App (1st) 160917-U. We recite only the facts necessary to address his claims on appeal.

¶ 4    A jury found Denham guilty of first-degree murder in the death of Phillip Finley. Broadly speaking, the evidence at trial showed that Denham got into an argument with Finley near a bus stop close to the intersection of Garfield Boulevard and Wabash Avenue. Denham confessed to the shooting but claimed self-defense, as the two had a history of conflict.

¶ 5    At trial, several witnesses testified that, on July 10, 2012, near the intersection of Garfield and Wabash, they saw a man, whom several identified as Denham, shoot Finley and then flee the scene. Police eventually tracked Denham down and arrested him outside an apartment; when he was arrested, police found 19 bags of what they suspected was cannabis in his pants. A swab taken of Denham's hand after his arrest tested positive for gunshot residue.

¶ 6    Denham was taken to a police station, where he spoke with investigators. Videos of his interviews with police were played at trial. In the first video, after being advised of his rights, Denham initially denied knowing anything about the Finley shooting. He later admitted he was "selling something" in the area of the shooting but denied any role in the shooting. Finally, the next morning, and after being advised of his rights again, Denham admitted he shot Finley, going so far as to shoot him once or twice while Finley was lying on the ground. Denham told investigators that Finley had "jumped" him previously and showed the interviewing sergeant the scabs on his knees that he claimed came from that earlier fight. Denham said he did not intend to kill Finley; he just wanted to hit him in the leg. Denham later told an assistant state's attorney a similar story, claiming he shot Finley in retaliation for having jumped him previously.

¶ 7    Denham testified in his own defense at trial. He told the jurors that the area around Garfield and Wabash was gang-infested with all kinds of factions, and that after he had lost his job at a restaurant, one member of the Bully Boys gang hired him to sell drugs, even though Denham was not a member. In early June 2012, at around midnight, Denham was walking down

Garfield when Finley and two other men walked past him; as Denham turned around, he was met by Finley's fist, which hit him square in the jaw. The two began fighting, Denham said, while the other men who were with Finley punched and kicked Denham. The fight eventually broke up, and everybody went their separate ways.

¶ 8    About a month later, on July 10, Denham was selling marijuana when he saw Finley walking down the street. Denham, still mad about Finley having jumped him, decided he was going to get him back. To avoid starting a gang war, however, Denham approached Finley on his own—but armed himself by retrieving a 9mm handgun from a nearby garbage can, as he believed Finley regularly carried a gun. Denham walked toward Finley; the two men met up, face-to-face, near the intersection of Garfield and Wabash. When Finley approached him, he gave Denham an angry look and, according to Denham, reached for his belt buckle. Denham believed Finley was reaching for a gun and feared for his life, so he pulled out his gun, shot Finley three times, and ran to a nearby building, where he was later arrested.

¶ 9    At Denham's request, the jury was given instructions on second-degree murder and self-defense. But the jury found Denham guilty of first-degree murder and made a special finding that Denham had personally discharged a firearm that proximately caused Finley's death.

¶ 10    At sentencing, defense counsel noted that Denham was in his early 20s at the time of the killing (he was 21), trying to take care of his girlfriend and young child, and was working at a pizza restaurant. Counsel argued that Denham was "a young man who made a stupid, stupid decision and has cost him the vast majority of his life." When given a chance to speak, Denham apologized and said he did not kill Finley in cold blood. The trial court sentenced Denham to 60 years in prison; 35 for the murder, plus 25 years for the firearm enhancement. The court said it considered the parties' arguments in aggravation and mitigation, Denham's statement, his family

and educational background, his work and social history, and his rehabilitative potential. Most of that was contained in a presentence investigation ("PSI") report, which the court said it reviewed. Denham moved to reconsider the sentence, arguing that it was excessive and that his sentence constituted a *de facto* life sentence, but the court denied the motion.

¶ 11 On appeal, Denham argued that his conviction should be reduced to second-degree murder and that his sentence was excessive. *Denham*, 2019 IL App (1st) 160917-U, ¶ 31. Notably, Denham did not argue that his sentence, as applied to him, violated the proportionate-penalties clause of our state constitution. We rejected his claims and affirmed. *Id.* ¶ 1. Denham filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court that was denied.

¶ 12 On February 5, 2020, Denham filed a *pro se* postconviction petition, first alleging that appellate counsel had been ineffective for not preserving the sentencing issues in the PLA. He also claimed his sentence was excessive and constituted a *de facto* life sentence in violation of the proportionate-penalties clause of the Illinois Constitution. See Ill. Const. 1970, art. I, § 11.

¶ 13 The petition went unnoticed for months. When the court finally reviewed it, it was well past the 90-day deadline for a first-stage review, so it was advanced to the second stage and counsel was appointed. See 725 ILCS 5/122-2.1 (West 2020). On March 2, 2022, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), finding no need to supplement Denham's *pro se* petition to adequately present his claims. Nearly a year later, the State moved to dismiss, arguing that Denham's claims were meritless.

¶ 14 After the State filed its motion to dismiss, postconviction counsel apparently changed his mind and, in September of 2023, filed a new Rule 651(c) certificate, saying that he would file a supplemental petition. The supplemental petition added two claims: (1) trial counsel was ineffective for not arguing and preserving the issue that Denham's sentence violated the

proportionate-penalties clause; and (2) appellate counsel was ineffective for not raising, on direct appeal, trial counsel's ineffectiveness for failing to preserve the proportionate-penalties issue. The trial court dismissed Denham's petition in a written order.

¶ 15    Denham now appeals but makes no attempt to resurrect his claim that his sentence violates the proportionate-penalties claim of the Illinois Constitution. Rather, he argues that postconviction counsel provided unreasonable assistance for "failing to properly substantiate" his proportionate-penalties challenge.

¶ 16    The Post-Conviction Hearing Act provides a three-stage process for adjudicating postconviction claims of constitutional error. *People v. Custer*, 2019 IL 123339, ¶ 29. At the second stage of proceedings, where we find this case, the question is whether the petition makes a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 17    Though counsel is appointed at the second stage, there is no *constitutional* right to the assistance of counsel in postconviction proceedings. *People v. Addison*, 2023 IL 127119, ¶ 19. Rather, the right to counsel is a matter of legislative grace; petitioners are entitled only to the level of assistance the statute grants, which our supreme court has called a "reasonable level of assistance." *People v. Custer*, 2019 IL 123339, ¶ 30.

¶ 18    That assistance is "significantly lower" (*id.*) than the constitutional level of effective assistance afforded at trial, "because trial counsel plays a different role than counsel in postconviction proceedings." *People v. Owens*, 139 Ill. 2d 351, 364 (1990). At trial, the defendant is presumed innocent; counsel must shield the client from the government's attempt to deprive him of his liberty. *Id.* At the postconviction stage, the petitioner is not presumed innocent. Postconviction counsel "is appointed not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to

present those complaints to the court." *Addison*, 2023 IL 127119, ¶ 19.

¶ 19 Our supreme court has spelled out the limited duty of reasonable assistance in Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which requires that counsel (1) meet with the petitioner to understand his constitutional claims; (2) examine at least the parts of the record relevant to those claims; and (3) make any amendment to the petition necessary for an adequate presentation of those claims. If postconviction counsel files a certificate swearing to compliance, courts will indulge a presumption of reasonable assistance that can only be rebutted by affirmative evidence in the record to the contrary. *People v. Urzua*, 2023 IL 127789, ¶ 54.

¶ 20 Thus, if postconviction counsel files a valid Rule 651(c) certificate and fails to amend a petition, we presume there was no good-faith basis to amend. See *Huff*, 2024 IL 128492, ¶ 22 ("It is presumed from the lack of an amendment that there were none to be made."); *People v. Perkins*, 229 Ill. 2d 34, 51-52 (2007) (though postconviction counsel failed to amend petition to address timeliness problem, supreme court presumed from valid Rule 651(c) certificate that counsel had no valid excuse for untimeliness); see also *People v. Boyce*, 2026 IL App (1st) 240573-U, ¶ 25 ("We assume, based on counsel's Rule 651(c) certificate, that counsel had no information to provide—no information he could provide in good faith, at least," to elaborate on *pro se* petition's claim of prosecutorial misconduct.).

¶ 21 Here, Denham's counsel filed two Rule 651(c) certificates, the second superseding the first. In that second certificate, counsel swore (1) that he communicated with his client to ascertain his claims of constitutional deprivation, (2) that he examined the record, including the common-law record, report of proceedings and any exhibits in the possession of the Clerk of the Circuit Court, plus Denham's *pro se* petition, and (3) notably, that he was "filing a supplemental petition to provide adequate presentation of Petitioner's claims."

¶ 22    Denham first claims the presumption does not attach, as counsel's Rule 651(c) certificate did not perfectly parrot the language of Rule 651(c). The rule requires counsel to certify that he "has made any amendments to the petition filed *pro se* that are necessary for an adequate presentation of petitioner's claims." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). But that is splitting verbal hairs; even if counsel's certificate "did not mirror the language of Rule 651(c) precisely, it still substantially complied with the rule." *People v. Landa*, 2020 IL App (1st) 170851, ¶ 49. Counsel is thus entitled to a presumption of reasonable assistance that Denham must rebut with record evidence to the contrary. *People v. Huff*, 2024 IL 128492, ¶ 23.

¶ 23    Denham says the record rebuts that presumption. He claims counsel could have added more meat to the bones of his proportionate-penalties claim, such as "young adult jurisprudence or recent decisions on whether a *de facto* life sentence can be imposed" on a young adult, or "how recent advancements in brain science may impact a specific individual." He even suggests that counsel should have hired an expert, who "could have testified about the special characteristics of Denham's young and cognitive development at the time of the offense."

¶ 24    The record does not rebut the presumption of reasonable assistance. One amendment was indeed necessary to shape the *pro se* petition into a proper legal form—adding allegations of ineffective assistance of trial and appellate counsel to avoid forfeiture of Denham's proportionate-penalties claim. See *People v. Williams*, 2024 IL 127304, ¶ 20; *Addison*, 2023 IL 127119, ¶ 23. But counsel made that very amendment.

¶ 25    Beyond that, the record does not disclose any information that counsel could have cited to improve this claim. True, counsel could have cited case law or recent scientific studies on the young-adult brain. But our supreme court has held that a postconviction petitioner does not even state the gist of a proportionate-penalties claim at the *first* stage of proceedings, much less make

a substantial showing of a claim at the second, if he "simply cites his age at the time of the offense and the evolving science on juvenile maturity and brain development." *Williams*, 2024 IL 127304, ¶ 31.

¶ 26    Denham's PSI report, which the trial court reviewed before sentencing, revealed no particular characteristics of the 21-year-old—impulsivity, lack of maturity or cognition—or any other personal circumstances that would assist his claim. Denham told investigators that, despite only having met his father once and being raised exclusively by his mother, his childhood was "normal." He did not suffer abuse, nor did he struggle with substance abuse or mental illness. He was a high school graduate and was not affiliated with a gang.

¶ 27    But Denham says that counsel should have searched for an expert to analyze Denham and substantiate his claim. He vastly overstates the duty of postconviction counsel.

¶ 28    Counsel is not required "to locate witnesses not specifically identified by the petitioner or to conduct an investigation to discover the identity of witnesses who would provide evidence to support a claim" in the petition. *People v. Williams*, 186 Ill. 2d 55, 60-61 (1999); see *People v. Moore*, 189 Ill. 2d 521, 542 (2000); *People v. Johnson,* 154 Ill. 2d 227, 247-48 (1993); *People v. Butler*, 2025 IL App (1st) 242327-U, ¶ 35 ("Defendant's allegation that postconviction counsel violated Rule 651(c) by not obtaining additional evidence, in whatever form, demonstrates a fundamental and critical misunderstanding of the scope of the rule." (quoting *People v. Garcia,* 405 Ill. App. 3d 608, 625 (2010))).

¶ 29    More specifically here, postconviction counsel had no duty to locate an expert to substantiate Denham's claim. See *Williams*, 186 Ill. 2d at 61 ("post-conviction counsel clearly had no obligation to seek out a blood-type expert or to conduct a fishing expedition for evidence regarding the chain of custody of the bullet removed from [victim's] body"); *Moore*, 189 Ill. 2d

at 542; *People v. Estrada*, 2026 IL App (1st) 240821-U, ¶ 61; *Butler*, 2025 IL App (1st) 242327-U, ¶ 35. If Denham had an expert in mind to substantiate his claims, or if he had other evidence that could bolster his proportionate-penalties claim, it was his obligation to provide that evidence to postconviction counsel for further investigation, not counsel's obligation in the first instance to hunt for such testimony or evidence. *Moore*, 189 Ill. 2d at 543; *Williams*, 186 Ill. 2d at 61.

¶ 30    The record here does not demonstrate that Denham provided counsel any such information—additional evidence of his mental or emotional characteristics or any expert available to testify to same. We thus presume, in light of counsel's valid Rule 651(c) certificate, that counsel had no good-faith basis for a further amendment to the *pro se* petition. *Huff*, 2024 IL 128492, ¶ 22; *Perkins*, 229 Ill. 2d at 51-52. Denham has not overcome the presumption of reasonable assistance.

¶ 31    Affirmed.